PLOTKIN, Judge.
We granted certiorari in these two cases in order to determine which statute and procedure applies to juvenile courts for holding a custodial or a non-custodial parent in contempt of court for failing to comply with rehabilitation, treatment, or therapy orders. At issue is the interpretation of C.J.P. art. 20, granting juvenile court general contempt powers, linked to La.R.S. 13:1590, Contempt, and Chapter 24 of the Code of Juvenile Procedure, Parents in Need of Supervision.
In the case of State of La. in the Interest of the Minors: Darell Anderson, Ro-nette Arcell and Pamela Sims, the children of Ms. Sims were adjudicated in need of care on November 3, 1987 and placed under the care and custody of the State of Louisiana. In the November, 1987, hearing, an order was issued for Ms. Sims to attend substance abuse counseling. Six-month review hearings were held to monitor the progress of the children. At the June, 1988, hearing, the court ordered Ms. Sims to submit to drug tests, to attend a Substance Abuse Clinic, to submit to psy *194 chiatric and psychological testing and to keep the Office of Community Services informed of her current address and phone number. Ms. Sims was found to be in contempt of court on November 15, 1988 for failure to obey court orders issued on June 21, 1988. She was sentenced to six months in prison. The imposition of the sentence was delayed pending the filing of writs.
In the case of In re Lillian Myles, the child, Damon, was found to be a child in need of care at a hearing held in January, 1987. The court allowed the child to remain in the mother’s custody. The court ordered the mother to cooperate fully with the School Board and the Office of Human Development in meeting her son’s medical needs. During the course of the next two years, at the six month review hearings, Ms. Myles was further ordered to participate in parenting classes and classes for the deaf and to attend family therapy. On November 9, 1988, the court ordered the child removed from the custody of the mother because of her failure to comply with the court orders. On December 6, 1988, Ms. Myles was found to be in contempt of court for failure to follow the orders of the court. She was sentenced to serve six months in jail, three months of which were suspended. The sentence was later modified to three months imprisonment on January 6, 1989.
In both cases, Antoinette Sims and and Lillian Myles were held in contempt pursuant to La.R.S. 13:1590, without first being adjudicated “in need of supervision,” pursuant to C.J.P. arts. 114-120. The statute, La.R.S. 13:1590, applies only to the party having custody of the child, who may or may not be the parent, whereas the C.J.P. arts. 114-120 relates only to a parent whose habitual conduct has substantially contributed to the condition of a child under the parent’s control. This initial distinction, though, is not relevant because both parties are the parents of children found in need of care.
The threshold issue is whether the Juvenile Court had the statutory authority to issue orders to parents without following the procedures and complying with the additional statutory guarantees of C.J.P. arts. 114-120. Therefore, we must first analyze the authority of the court to hold any party in contempt and then examine the specific authority under La.R.S. 13:1590 and the C.J.P. arts. 114-120.
The Louisiana Code of Juvenile Procedure, which became effective January 1, 1979, consolidated and revised the laws applicable to courts exercising juvenile jurisdiction. The Code includes provisions pertaining to the general authority of the courts and inherent powers necessary for the exercise of its jurisdiction. C.J.P. art. 20 confers general contempt power on the Juvenile Court.
Art. 20 Contempt
Any person who willfully violates, neglects, or refuses to obey or perform any lawful order of a court may be proceeded against for contempt of court, and contempt proceedings shall be conducted in accordance with the provisions of Articles 221 through 227 of the Code of Civil Procedure. This general contempt authority shall not detract from or prevent application of specific contempt provisions stated in R.S. 13:1590 or in other provisions of this Code or of the Revised Statutes.
Pursuant to this authority, the Juvenile Court has the power to hold any person in contempt for not following a lawful order. This principle has been upheld jurispruden-tially even before the codification of juvenile procedure under the code. In re Shoemaker, 234 La. 932, 102 So.2d 220 (1958).
Specifically, juvenile courts have the power to order the parent, custodian or other person entrusted with the care of the child to comply with court orders for the benefit of the child. This authority, La. R.S. 13:1590, which predates the Code of Juvenile Procedure, states in pertinent part:
“... the court in its discretion shall have the power to order the parent, guardian, custodian, or any other person entrusted with the care of a child coming within the jurisdiction of the juvenile court to at *195 tend family counselling sessions, mental health centers, to assist in obtaining vocational training or special education placement for the child, to assist in any other adjustment program deemed appropriate, and such other facilities which in the opinion of the judge, may be beneficial and remedial in the rehabilitation of the child; it being the intent of this section that the parent or other person having custody fully cooperate and assist in the entire rehabilitative program prescribed by the court as conditions or incidents of probation, supervision, protection, custody, or release on parole(Emphasis added.)
The purpose of this statute is to confer specific authority on the juvenile court to order any person with custody to cooperate with the court in the programs deemed necessary for the child. A juvenile court employing this statute would not have to first adjudicate a parent “in need of supervision.” The court would issue an order to the appropriate party and then hold them in contempt of court for non-compliance.
The Code of Juvenile Procedure provides for a process whereby the parent is found “in need of supervision.” C.J.P. art. 114 states:
Art. 114. Parents in need of supervision; grounds
A. The court may adjudicate a parent in need of supervision if the court finds:
(1)A child under the parents control is a delinquent, a child in need of care, or a child in need of supervision.
The purpose is to provide the Juvenile Court with the power and procedure to order a parent to cooperate in and submit to personal rehabilitation programs and participate in practices which will help his child. A petition is filed by the District Attorney, a hearing is scheduled and a formal judgment is issued if the parent is adjudicated “in need of supervision.” C.J.P. art. 115-119. C.J.P. art. 120 limits the scope of authority over a parent to order rehabilitation.
Art. 120. Parents in need of supervision; disposition
In cases in which a parent has been adjudicated to be in need of supervision, the court may:
(1) Order the parent to submit to counseling or to psychiatric or psychological examination or treatment;
(2) Order the parent to cooperate in connection with a judgment of disposition affecting the child; and
(3) Impose any other conditions reasonably related to improving the family relationship.
La.C.J.P. art. 120 gives the court broader power to fashion a remedy than LSA-R.S. 13:1590. Although there is some overlap, C.J.P. art. 120(1) allows the court to go further in compelling a parent to submit to treatment programs that are clearly not within the scope of the revised statute. C.J.P. art. 120(3) gives the court discretionary power to impose any conditions reasonably related to improving the family relationship. This kind of broad discretion over a parent’s actions is not included in the contempt power authorized by La.R.S. 13:1590.
Thus, after the procedures outlined in C.J.P. arts. 115-119 are followed, the juvenile court may issues orders pursuant to C.J.P. art. 120. Subsequently, following this procedure, if a parent refuses to obey or perform the order, then and only then can the parent be held in contempt.
Therefore, the juvenile court has the authority to hold parties in contempt for non-compliance with lawful orders. C.J.P. art. 20; La.R.S. 13:1590. Pursuant to La.R.S. 13:1590, a custodial party can be ordered to assist the court in areas deemed helpful to the benefit of the child. The court is given additional authority to issue orders to and impose conditions upon parents pursuant to C.J.P. art. 120, after the parent is adjudicated “in need of supervision.” • Non-compliance with court orders issued under authority of either the revised statute or the Code of Juvenile Procedure gives rise to the contempt power of the court.
The next question for consideration is whether contempt proceedings in juvenile court meet the standard for procedural due *196 process. Those standards normally include the right to both notice and a hearing, and the right to an impartial decisionmaker which renders its decision with reference to articulable standards. Haughton Elevator Div. v. State, Through Division of Administration, 367 So.2d 1161 (La.1979).
In these cases, the parents were issued subpoenas to appear in court on petitions filed on behalf of their children. The parents were given additional notice at each six-month review hearing on their children’s cases. Before the parents were actually adjudicated in contempt for non-compliance with court orders, further subpoenas were issued and a hearing held on the contempt citation. Therefore, procedural due process was clearly complied with by the Juvenile Court in these cases.
However, as we have indicated, the Code of Juvenile Procedure mandates additional statutory guarantees if the nature of the court orders are of the kind authorized by C.J.P. art. 120. A parent whose habitual conduct has substantially contributed to the condition of the child may be found “in need of supervision” and then forced to comply with such orders, such as psychiatric and substance abuse treatment, only after the additional statutory guarantees have been met.
Under this analysis, in at least one of the consolidated cases—Sims—the court erred procedurally. Antoinette Sims was found to be in contempt of court after failing to comply with court orders to submit to drug tests, to attend a Substance Abuse Clinic, to submit to psychiatric and psychological testing and to keep Office of Community Services informed of her current address and phone number. In this case, the court did not have the authority under LSA-R.S. 13:1590 to order the parent to do these things. The only way to derive such authority would have been to follow the procedure outlined in the Code and first adjudicate Ms. Sims a parent “in need of supervision.”
The factual situation is different in the Myles case. The court ordered the mother to cooperate fully with the School Board and the Office of Human Development in meeting her son ⅛ medical needs. Ms. Myles was further ordered by the court to participate in parenting classes and classes for the deaf and to attend family therapy. The orders issued to Ms. Myles would clearly fall under the court’s authority pursuant to La.R.S. 13:1590.
On the sentencing issue, when a court does find.a party in contempt for refusal to obey an order, the maximum jail sentence is three months. C.C.P. art. 227; La.R.S. 13:4611(l)(d). Ms. Myles’ sentence was modified to three months imprisonment which is within the limits of the statute. The sentence of Ms. Sims is a term of six months imprisonment which exceeds the limits of the statute.
For the above and foregoing reasons, the decision in the case of State in the Interest of Lillian Myles is affirmed. The decision in the ease of State of La. in the Interest of the Minors: Darell Anderson, Ronette Arcell and Pamela Sims is reversed and remanded for further proceedings consistent with the principles set out in this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.